FURR et al., Appellees,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
et al.; Milwaukee Guardian Insurance Company, Appellant.

[Cite as *Furr v. State Farm Mut. Auto. Ins. Co.* (1998), 128 Ohio App.3d 607.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–97–1202.

Decided June 26, 1998.

608

610

*George C. Rogers,* for appellees.

*Marcia A. Wagner,* for appellant.

KNEPPER, Judge.

This is an appeal from the judgment of the Lucas County Court of Common Pleas granting Reuben Furr judgment against Milwaukee Guardian Insurance Company ("Milwaukee") in the total amount of $168,575, plus attorney fees in the amount of $71,075. For the reasons that follow, we affirm the judgment of the trial court in part and reverse in part.

The pertinent, undisputed facts are as follows. On November 18, 1993, Levi Furr was involved in a one-car accident, wherein he was the passenger and

Alyson Bond Wilson was the driver. Although there were no witnesses to the accident, according to the police report, the car was traveling at a high rate of speed and hit a puddle of water, thereby causing the car to hydroplane and collide with a tree. Both Levi and Alyson died as a result of the accident.

After viewing an advertisement in the newspaper, the Furrs contacted the firm of Rogers & Godbey concerning their potential claim. On June 6, 1995, Reuben Furr, Levi's brother, gave Milwaukee notice of the accident and sought recovery of uninsured motorist coverage under his policy with Milwaukee. Reuben had coverage with Milwaukee of $100,000 per person/$300,000 per accident. Reuben made a demand for his policy limits; however, no offer of settlement was made in the four months following notification.

On October 23, 1995, a complaint was filed by Levi's mother, Pearl Furr, personally and as administrator of the estate of Levi Furr, and by Reuben Furr, Arie Furr, and Ava Crockett, against State Farm Insurance Company, Milwaukee, and Mark A. Robinson, as administrator of the estate of Alyson Bond Wilson. The complaint asserted a claim for wrongful death; a claim for breach of contract and bad faith by Arie, Ava, and Pearl against State Farm; a claim for breach of contract and bad faith by Reuben against Milwaukee; and class action allegations against State Farm.

Although Milwaukee eventually made an offer of $15,000 in October 1996, and then increased the offer to $30,000 before trial, no settlement was reached. The matter proceeded to jury trial on February 10, 1997. The jury rendered its verdict in favor of Reuben[1] on February 14, 1997,[2] as follows:

 $ 60,000 for Reuben's "uninsured motorist" claim
 $108,575 for Reuben's "lack of good faith" claim, broken down as follows:
 $ 1,075 for statutory interest
 $ 7,500 for compensatory damages
 $100,000 for punitive damages

The jury also specified that attorney fees should be awarded by the court. Following a hearing on April 2, 1997, the trial court awarded attorney fees in the amount of $71,075, journalized April 17, 1997. Milwaukee filed a timely notice of appeal thereafter.

Milwaukee set forth eleven assignments of error in its brief. Prior to oral arguments, appellant requested a dismissal of its assignments of error concerning

---

**1.** A judgment entry of settlement and dismissal, with prejudice, as to State Farm was journalized on December 12, 1996. Judgment for Pearl, in her administrative capacity, against Mark A. Robinson, as administrator, had been entered on November 1, 1995; however, the assessment-of-damages portion of her claim was still pending for determination at trial. Reuben's claims against Milwaukee were also still remaining for trial.

**2.** Although the record reflects that the jury rendered its verdict on February 14, 1997, we note that the verdict forms were actually journalized on February 19, 1997.

the breach of contract claim and the $60,000 verdict awarded therefor. Accordingly, the appeal remains only as to the errors and arguments relating to the $179,650 judgment reflecting compensatory damages, punitive damages, prejudgment interest, and attorney fees on Reuben Furr's "bad faith" tort claim. Milwaukee's original assignments of error were set forth as follows:

"I. The trial court erred to the prejudice of Milwaukee in granting Reuben Furr's motion for directed verdict on his breach of contract claim.

"II. The trial court erred to the prejudice of Milwaukee when it failed to apply the correct legal standard and instead applied an incorrect standard as to whether Milwaukee breached its duty to act in good faith.

"III. The trial court erred to the prejudice of Milwaukee in its denial of Milwaukee's motion to exclude testimony of plaintiffs' expert witness, Bradley A. Levin.

"IV. The trial court erred to the prejudice of Milwaukee in its submission of jury instructions which do not fully and accurately set forth the law on all relevant matters before the jury.

"V. The trial court erred to the prejudice of Milwaukee in its formulation of the verdict forms submitted to the jury.

"VI. The trial court erred to the prejudice of Milwaukee in its denial of Milwaukee's motion for judgment notwithstanding the verdict.

"VII. The trial court erred to the prejudice of Milwaukee in its award of attorney fees to Reuben Furr.

"VIII. The trial court erred to the prejudice of Milwaukee by *sua sponte* ordering a trial by jury when the Furrs waived their right to a jury and Milwaukee consented to a trial to the court.

"IX. The trial court erred to the prejudice of Milwaukee in its exclusion of the trial testimony of Milwaukee's fact witness, K.B. Gupta, M.D.

"X. The trial court erred to the prejudice of Milwaukee by not submitting Milwaukee's proposed interrogatories to the jury.

"XI. Even if no independent assignment of error is sufficient to justify reversal, the cumulative effect of the errors committed by the trial court denied Milwaukee a full, fair, and impartial trial."

Pursuant to Milwaukee's request for dismissal of the assignments of error relating to the breach-of-contract claim, the following assignments of error have been dismissed and will not be considered by this court:

"1. Assignment of Error No. One, regarding the trial court's grant of a directed verdict in favor of Reuben Furr on his breach of contract claim;

"2. Assignment of Error No. Four, only to the extent that it challenges breach of contract jury instructions;

"3. Assignment of Error No. Five (A), which related to Reuben Furr's breach of contract claim;

"4. Assignment of Error No. Ten, only to the extent that it challenges the trial court's refusal to submit Milwaukee Guardian's proposed interrogatories to the jury regarding Furr's breach of contract claim."

Beginning with its second assignment of error, Milwaukee argues that the trial court erred by applying the incorrect standard with respect to whether Milwaukee breached its duty to act in good faith. Specifically, Milwaukee asserts that the trial court's application of Ohio Adm. Code 3901–1–54 prejudiced Milwaukee.

Reuben's expert, attorney Bradley Levin, licensed to practice in Colorado and California, was permitted to testify regarding Ohio Adm. Code 3901–1–54 as evidence of the standard of care required by insurance companies in Ohio. Levin testified that claims need to be handled promptly and fairly and that the Ohio Administrative Code recommends guidelines, such as "An insurer shall within twenty-one days of the receipt of properly executed proof(s) of loss decide whether to accept or deny such claim(s)." Ohio Adm. Code 3901–1–54(G)(1). Levin went on further to testify that twenty-one days was an adequate time period for Milwaukee to make that decision and, with a forty-five-day extension, as provided for in Ohio Adm. Code 3901–1–54(G), there was "absolutely" enough time to make such a decision. And, if there were extenuating circumstances that would have prevented Milwaukee from making its decision, it could have written to counsel and informed him that it needed additional time. Levin's testimony in this respect, however, was not objected to at trial.

Generally in civil cases, errors which arise during the course of the proceedings and are not brought to the attention of the trial court by objection or otherwise at the time when error could have been avoided or corrected are waived and may not be reviewed on appeal. *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099, 1103; *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640, 642–643; Civ.R. 51(A). Exceptions to this rule may be allowed in the case of "plain error." The Supreme Court of Ohio, however, has limited the application of the plain error doctrine in civil cases to extremely rare cases involving exceptional circumstances that seriously affect the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Goldfuss* at syllabus.

We find that Levin's discussion of the Ohio Administrative Code does not affect the basic fairness, integrity, or public reputation of the judicial process. Accord-

ingly, Milwaukee's arguments with respect to Levin's testimony regarding the Ohio Administrative Code will not be considered. See *Goldfuss, supra.*

 With respect to the applicable law in this case, it is well established that an insurer has a duty to its insured to act in good faith in the handling and payment of an insured's claims. *Hoskins v. Aetna* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph two of the syllabus. As stated in *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus, the standard to be applied in determining whether an insurer acted in bad faith is as follows:

"An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor. (*Hart v. Republic Mut. Ins. Co.* [1949], 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347, and *Staff Builders, Inc. v. Armstrong* [1988], 37 Ohio St.3d 298, 525 N.E.2d 783, approved and followed; *Slater v. Motorists Mut. Ins. Co.* [1962], 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus, overruled; *Motorists Mut. Ins. Co. v. Said* [1992], 63 Ohio St.3d 690, 590 N.E.2d 1228, overruled to the extent inconsistent herewith.)"

The trial court instructed the jury regarding the twenty-one-day rule and the forty-five-day extension, as set forth in the Ohio Administrative Code, and stated that "[y]ou may consider violations of the administrative code provisions as evidence in your determination of whether or not the insurer acted in bad faith." The trial court, however, went on to instruct the jury:

"If you find that the defendant breached its duty of good faith and fair dealing by refusing, without reasonable basis, to compensate plaintiff for a covered loss, then plaintiff is entitled to recover an amount that will compensate plaintiff for all damages caused by that breach * * *."

 Milwaukee argues that the Ohio Administrative Code does not create a private cause of action for violation of its rules and, therefore, should not be considered as evidence of bad faith. We agree. Ohio Adm. Code 3901–1–54(B) clearly states that "[n]othing in this rule shall be construed to create or imply a private cause of action for violation of this rule." See, also, *Orra v. Ohio Fair Plan Underwriting Assn.* (Mar. 31, 1988), Lucas App. No. L–87–233, unreported, 1988 WL 36380; *Kimpel v. Dairy Farm Leasing Co.* (Jan. 9, 1987), Williams App. No. WMS–86–8, unreported, 1987 WL 5310; *Griffith v. Buckeye Union Ins. Co.* (Sept. 29, 1987), Franklin App. No. 86AP–1063, unreported, 1987 WL 17805. In *Griffith,* the court held:

"Plaintiffs also contend that R.C. 3901.21 and its corollary Ohio Adm.Code 3901–1–07 *et seq.* are evidence of the standard of conduct required by an insurer

doing business in its jurisdiction. The Ohio Department of Insurance rules, however, do not create a private cause of action, but are regulatory in nature. Thus, the rules cannot be considered evidence of the applicable standard of bad faith."

■ Although the trial court instructed the jury that it might consider violations of the Ohio Administrative Code provisions as evidence in determining whether Milwaukee acted in bad faith, the law in Ohio requires that we review the jury instructions in their entirety. *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. With respect to incorrect jury instructions, the Ohio Supreme Court stated:

"In determining the question of prejudicial error in instructions to the jury, the charge must be taken as a whole, and the portion that is claimed to be erroneous or incomplete must be considered in its relation to, and as it affects and is affected by the other parts of the charge. If from the entire charge it appears that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results. See *State v. Porter* (1968), 14 Ohio St.2d 10 [43 O.O.2d 5, 235 N.E.2d 520]; *Centrello v. Basky* (1955), 164 Ohio St. 41 [57 O.O. 77, 128 N.E.2d 80]." *State v. Hardy* (1971), 28 Ohio St.2d 89, 92, 57 O.O.2d 284, 285–286, 276 N.E.2d 247, 250.

■ We find that the jury was properly instructed regarding an insurer's duty of good faith, *i.e.*, that an insurer breaches its duty to act in good faith when it refuses to pay a claim without reasonable justification or basis. We further find that, having been correctly instructed, the jury was not misled by the incorrect jury instruction concerning the Ohio Administrative Code. We base our finding on the fact that, although instructed that it could use violations of the Ohio Administrative Code in determining whether Milwaukee acted in bad faith, the jury was not instructed that a violation would *per se* amount to a breach of good faith. Additionally, even if the jury considered the twenty-one-day violation as evidence of bad faith, it was still to determine whether Milwaukee had a reasonable basis for denying Reuben's claim. If it had determined that there was reasonable justification, then bad faith would not have been found.

Accordingly, upon considering the jury instructions as a whole, we find that there was no prejudice to Milwaukee as a result of the inclusion of the Ohio Administrative Code jury instruction. See *Hardy, supra.* Milwaukee's second assignment of error is therefore found not well taken.

■ Milwaukee's third and ninth assignments of error concern alleged evidentiary errors. Decisions concerning the admission of evidence are within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881,

paragraph three of the syllabus; *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493–494. An abuse of discretion means more than a mere error of law or judgment; it implies an attitude on the part of the trial court that is arbitrary, capricious, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

 In its third assignment of error, Milwaukee asserts that the trial court erred in its denial of Milwaukee's motion to exclude testimony of appellees' expert witness, Bradley Levin. Milwaukee argues that Levin's testimony was not beyond the knowledge or experience possessed by laypersons or used to dispel a misconception among laypersons. Milwaukee also argues that Levin was not qualified to give an expert opinion regarding whether Milwaukee acted "reasonably."

Evid.R. 702 provides:

"A witness may testify as an expert if all of the following apply:

"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony * * *."

In his testimony, Levin explained casualty insurance, uninsured motorist insurance, reserves, bad faith claims, the Ohio Administrative Code, how claims are processed and investigated, and an insurance company's duty to its insured. After being given a factual scenario of the case, Levin testified that the claim was handled in a manner well below appropriate standards of care and that there was no reasonable justification for the delays and the failure by Milwaukee to make payment on the claim. We find that the trial court did not abuse its discretion in finding that Levin's testimony either relates to matters beyond the knowledge or experience possessed by laypersons or dispels a misconception common among laypersons. See Evid.R. 702(A).

 Additionally, we find that the trial court did not abuse its discretion in finding that Levin was qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony. See Evid.R. 702(B). Levin holds a degree from Stanford and received his J.D. from Hastings College of Law. At the time of the trial, he had been practicing for seventeen years and had represented insurance companies on numerous occasions and advised them concerning proper claims handling. Additionally, he testified

that he "continuously [had] been involved as far as teaching, instructing lawyers, claims people, different individuals in the area of insurance, [had] given numerous seminars and presented a number of presentations—written presentations to them about the general area of insurance including insurance bad faith." Admitted to the practice of law in California and Colorado state courts and in several federal courts in California and Colorado, his current practice was mainly both commercial and tort litigation, including bad faith cases, with primary emphasis in the insurance area.

Having found that the trial court did not abuse its discretion in allowing Levin to testify, we find Milwaukee's third assignment of error to be not well taken.

■ In its ninth assignment of error, Milwaukee argues that the trial court erred to the prejudice of Milwaukee in its exclusion of the trial testimony of Milwaukee's fact witness, K.B. Gupta, M.D. Milwaukee asserts that Levi applied for Social Security benefits and that Dr. Gupta worked for the Social Security Administration during the processing of Levi's application. Milwaukee sought to introduce Dr. Gupta's testimony that Levi's family had abandoned him because of his lifestyle.

We find that the trial court did not abuse its discretion in precluding Dr. Gupta's testimony. The only issue on appeal concerns the bad faith claim, i.e., did Milwaukee have reasonable justification for denying Reuben's claim? Although initially it would appear that Dr. Gupta's testimony would be relevant, we note that this evidence was not discovered by Milwaukee until further investigation was conducted in October 1996. We fail to see how evidence that Levi was allegedly "abandoned" by his family, discovered some sixteen months after notification of Reuben's claim, is relevant to the issue of whether Milwaukee had reasonable justification for denying Reuben's claim.

■ Additionally, any possible error arising from the exclusion of this testimony was harmless given the fact that the jury heard testimony regarding Levi's drug use from Desorcy, as well as from Laurie Furr, Levi's ex-wife, Avis Furr, Levi's sister, and Katrina Furr, Levi's niece. Moreover, Laurie, Avis, and Katrina testified that Reuben did not approve of Levi's drug use. Katrina, in particular, testified that there was a distance between Reuben and Levi because of the drug use.

Accordingly, Milwaukee's ninth assignment of error is found not well taken.

■ In its fourth assignment of error, Milwaukee argues that the trial court erred in its submission of jury instructions that did not fully and accurately set

forth the law on all relevant matters before the jury.[3] Specifically, Milwaukee argues that the trial court incorrectly instructed the jury that the relationship between an insured and an insurer is fiduciary in nature. Milwaukee also argues that the trial court erroneously instructed the jury that "the reasonableness of an insurer's decision [to pay or decline a claim] is measured as of the time it was confronted with the factual situation to which it was called on to respond, and information secured by the insurer after failure to pay or resolve the benefits issue is not admissible to show the insurer's good faith." Milwaukee further argues that the previous erroneous instruction, coupled with the instruction that "an insurer's obligation to exercise good faith in timely investigation processing and paying its insured's claim continues even after the onset of litigation between them," prejudiced Milwaukee.

Milwaukee did not make an objection on the record to any of these instructions. We find that this is not one of the rare cases in which the plain error doctrine should apply. See *Goldfuss* at syllabus. Accordingly, appellant's fourth assignment of error is found not well taken.

 In its fifth assignment of error, section (B), Milwaukee argues that the trial court erred in not using the verdict forms suggested by Milwaukee. Specifically, Milwaukee argues that the trial court erred in combining two independent findings on one verdict form, *i.e.*, a finding of bad faith, with compensatory damages, and an award of punitive damages, which requires a finding of actual malice.

Milwaukee did not object to the verdict form as submitted to the jury and, therefore, our analysis would be limited to a plain error review. See *Goldfuss, supra*. In *Lambert v. Shearer* (1992), 84 Ohio App.3d 266, 286, 616 N.E.2d 965, 978, the court held that "because of the adverse effect on the proceedings and the administration of the law, it is a manifest miscarriage of justice when a trial court fails to ensure that a proper verdict is rendered * * *."

Milwaukee relies on *Lambert* for its holding that it is plain error to combine two independent findings on one verdict form. *Lambert*, however, is factually distinguishable from Milwaukee's case. In *Lambert*, the trial court submitted a verdict form to the jury that combined into one total amount the awards for both the wrongful death and survivorship actions. The obvious difference in our case is that the awards at issue are compensatory and punitive damages on a bad faith claim. Additionally, the verdict form in our case did not combine these two

---

3. Milwaukee initially argued that the trial court erred in its instructions concerning Alyson Bond Wilson's negligence. However, the error on those instructions was dismissed, as they dealt with Reuben's breach-of-contract action.

separate amounts into a total award; rather, the jury stated the separate amounts for each award.

▮ We find that it is not error to combine on a single verdict form awards for both compensatory and punitive damages on a bad faith claim where the jury was properly instructed as to the requisite evidentiary standards. Milwaukee correctly argues that a finding of bad faith does not automatically entitle an insured to punitive damages. Rather, an award of punitive damages requires a finding of actual malice. *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 557–558, 644 N.E.2d 397, 401–402. However, we can find no authority that requires that a separate verdict form be used for awarding punitive damages. Rather, the adequacy of the jury instructions is determinative.

In *Cleveland Cent. Excavating, Inc. v. Westlake* (Mar. 21, 1981), Cuyahoga App. Nos. 48482 and 48483, unreported, 1981 WL 4263, the court was faced with an argument similar to Milwaukee's. Although both compensatory and punitive damages were awarded on the same verdict form, the court affirmed the verdict when it found that the trial court's instructions clearly required the jury to make a separate finding of actual malice before awarding punitive damages. Upon reviewing *Staff Bldrs., Inc. v. Armstrong* (1988), 37 Ohio St.3d 298, 525 N.E.2d 783, we recognize that the court vacated an award for punitive damages on a bad faith claim where both compensatory and punitive damages were included on the same verdict form. The punitive damages award, however, was vacated because the instructions did not clearly state the difference between what was required for a finding of bad faith and what was required for an award of punitive damages, *i.e.*, actual malice. Although the court commented on the fact that the verdict form did not aid in making the distinction between the required evidentiary standards, the court did not state. that the award for punitive damages required its own verdict form.

In this case, the trial court instructed the jury, "You may not [award punitive damages] unless you find by the greater weight of the evidence that Milwaukee Guardian Insurance Company acted with actual malice." The trial court then defined actual malice. Accordingly, because the jury was clearly instructed that it was required to find actual malice before it could award punitive damages, we find that the trial court did not err by including the punitive damages award on the same verdict form with the compensatory damages award. Since the jury was properly instructed, we find that no purpose would be served by requiring a separate verdict form in this instance.

▮ Milwaukee also argues that the award of interest is meaningless, since there is no way of knowing how the jury arrived at its determination because (1) it was instructed to award interest "at the statutory rate of 10%," thereby

omitting "per annum," and (2) pursuant to *Myers v. Cent. Ins. Co.* (1997), 119 Ohio App.3d 277, 695 N.E.2d 49, Reuben was not entitled to interest until February 14, 1997, when the jury returned a verdict in his favor.

We find that the statutory interest award must be stricken. As stated in *Zoppo*, "[a]n insured who seeks prejudgment interest must follow the specific statutory procedures set forth in R.C. 1343 .03." *Zoppo, supra,* 71 Ohio St.3d at 558, 644 N.E.2d at 402. R.C. 1343.03(C) states:

"(C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, *if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict* or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." (Emphasis added.)

The statute sets forth certain requirements: the party seeking interest must petition the court, the decision is one for the court—not the jury, the trial court must hold a hearing on the motion, and the trial court must find that the party required to pay the judgment failed to make a good faith effort to settle and that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 658, 635 N.E.2d 331, 347–348.

None of the requirements set forth in R.C. 1343.03(C) was met in this case. Accordingly, we vacate the award of prejudgment interest.

Accordingly, we find Milwaukee's' fifth assignment of error well taken in part. We find no error with the jury's award of compensatory and punitive damages as to Reuben's bad faith claim. However, we find that the jury incorrectly awarded statutory interest and, therefore, the award of interest must be stricken.

In its sixth assignment of error, Milwaukee argues that the trial court erred to the prejudice of Milwaukee in its denial of Milwaukee's motion for judgment notwithstanding the verdict. Milwaukee argues that the trial court should have overturned the jury's award of punitive damages and attorney fees because the jury awarded an amount of compensatory damages that was lower than Reuben's lowest demanded amount, *i.e.,* $90,000.

The standard to be applied in considering a motion for a directed verdict is the same standard to be applied in considering a motion for judgment notwithstanding the verdict. See *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 318–319, 662 N.E.2d 287, 293–294, citing *Posin v.*

*A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 429–430, 344 N.E.2d 334, 338.

Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284–285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469, the Ohio Supreme Court observed:

"The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. [Citation omitted.] Thus, 'if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. *Kellerman v. J.S. Durig Co.* (1964), 176 Ohio St. 320 [27 O.O.2d 241, 199 N.E.2d 562].' *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 244, 363 N.E.2d 367, 368]." See, also, *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119–120, 671 N.E.2d 252, 255–256.

■ Milwaukee argues that because the jury awarded an amount less than Reuben's demand, there must have been reasonable justification for denying Reuben's claim. Additionally, Milwaukee argues that other jurisdictions have consistently held that punitive damages and attorney fees are unjustified where the amount awarded by a jury is less than the amount demanded by the plaintiff. See *Tyber v. Great Cent. Ins. Co.* (C.A.6, 1978), 572 F.2d 562; see, also, *Georgia Farm Bur. Mut. Ins. Co. v. Boney* (1966), 113 Ga.App. 459, 148 S.E.2d 457.

Initially, we note that there is no similar Ohio rule that states that a verdict for less than a plaintiff's demand automatically precludes awards for punitive damages and attorney fees. Moreover, the cases cited by Milwaukee are factually distinguishable from the case before us. In both *Tyber* and *Boney,* the insurance companies promptly engaged in settlement negotiations; however, in both cases, the insureds demanded various settlement amounts, and no amount could be settled on prior to trial.

■ In our case, there was a significant amount of testimony concerning Milwaukee's failure to pay Reuben's claim or admit in a timely manner that coverage was owed. On June 6, 1995, along with his notification of an uninsured

motorist claim, Reuben forwarded a copy of the police report and Levi's death certificate, along with case law supporting Reuben's claim. The police report stated that Levi was the owner of the BMW driven by Alyson Bond Wilson.

Milwaukee's adjuster, Joseph Desorcy, testified that Rodney K. Mercer was hired to investigate the matter and discover, among other items, information concerning ownership and insurance. On June 14, 1995, Desorcy made a notation in his file that additional investigation was required because he was unsure as to insurance on the involved vehicle and driver, as well as the relationship between the brothers. On June 27, 1995, Desorcy noted that Reuben did have a right to make a claim under his uninsured motorist coverage as a result of Levi's death.

No further action was taken on this case until September 1995, when Desorcy requested that Reuben's counsel make a monetary demand and provide justification for the demand. On September 8, 1995, Reuben's counsel forwarded a $100,000 demand along with jury verdict research reports and judgment entries reflecting $100,000 awards for siblings in wrongful death actions.

On September 13, 1995, Desorcy received Mercer's report which took approximately six hours to investigate. Mercer's report included a copy of the vehicle registration showing that Levi was the owner of the vehicle. The report also included a statement from Levi's mother, Pearl Furr, who stated that Reuben and Levi had a good relationship. Although the report indicated that no insurance was found, Pearl made statements concerning the fact that she believed that Alyson owned the vehicle and that Alyson had insurance when she first purchased the car.

It was Desorcy's position that it was necessary to know who owned the vehicle in order to determine whether there was other insurance and, therefore, determine whether Alyson was truly uninsured. On September 27, 1995, Pearl Furr supplied Desorcy with an affidavit indicating that she investigated whether Alyson was insured. Pearl stated in her affidavit that she believed that Alyson had only a grandmother and brother in the area. The brother told Pearl that he checked with Alyson's agent, but her insurance had lapsed prior to the accident.

Prior to October, Desorcy turned the case over to counsel. On October 5, 1995, Reuben's counsel demanded that an offer of settlement be made by October 18, 1995, or the claim would be considered rejected and suit would be filed. Desorcy responded that he would not be pressured and made no offer. Suit was filed on October 23, 1995.

With respect to Desorcy's inability to assess the claim in the four-month period requested by Reuben, Desorcy blamed his difficulties on the nineteen-month delay in notifying Milwaukee of the claim and the misinformation provided by the Furr family. However, upon further examination, Desorcy testified that there

was no other information that he could have had on November 18, 1993 that he did not have nineteen months later when notified of the claim:

"Q. All right. But you don't have any more sources or less sources after those 19 months after your own testimony, right?

"A. Within four months I knew and verified everything.

"* * *

"Q. * * * The issue of insurance has been resolved as early as June, and you believe no further investigation was necessary in order to consider that question, right?

"A. As to the coverage.

"* * *

"Q. * * * So that 19–month delay did not prejudice you in any way, did it?

"A. No, it didn't prejudice, not now."

During the four months between notification of the claim and suit being filed, besides Mercer's report and the information received by the Furrs, no investigation was conducted, Alyson's family was not contacted regarding the insurance issue, and no statement was taken from Reuben. Although there was testimony concerning Milwaukee's inability to investigate the scene because of the nineteen-month delay before notification of the claim, no officers were spoken to, no public records were reviewed concerning the condition of the road or the tree, and no residents on the street where the accident occurred were ever interviewed.

After suit was filed, Desorcy conducted no further investigation and did nothing more to assess the claim until October 1996, some sixteen months after first being notified of Reuben's claim. Desorcy testified that, although he personally did nothing further, counsel was investigating matters. However, but for Reuben's deposition taken in June 1996, there was no testimony regarding this alleged further investigation by others and no reports. Moreover, at Desorcy's second deposition on August 21, 1996, he had not even read Reuben's deposition. Although Desorcy continually testified that he wished to verify the information he received in the first four months before making an offer, he took no action to verify anything.

In October 1996, Desorcy obtained a report from the Social Security Administration that revealed that Levi was a drug abuser. Based on this information, Desorcy valued Reuben's claim at $15,000 and made an offer in October 1996. Before trial, the offer was increased to $30,000 to forgo the expense of trial. No evidence of insurance was ever discovered. Milwaukee presented additional evidence of the nature of Reuben's relationship with Levi; however, this information was not discovered until immediately before or during trial.

Based on the evidence in this case, there was substantial competent evidence to support Reuben's bad faith claim. Additionally, we find that reasonable minds could have concluded differently concerning whether Milwaukee had a reasonable justification for denying Reuben's claim. Accordingly, we find that the trial court did not error in denying Milwaukee's motion for judgment notwithstanding the verdict on this basis.

 Milwaukee also argues that punitive damages could not have been awarded, as there was no proof of actual malice, fraud, or insult, as required in *Zoppo v. Homestead Ins. Co.* In *Zoppo,* the court defined "actual malice" as " '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.' (Emphasis *sic.*) *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus." *Zoppo,* 71 Ohio St.3d at 558, 644 N.E.2d at 402.

As was found in *Zoppo,* we find that there was no evidence of hatred, ill will, or a spirit of revenge. However, we find that there was sufficient evidence that Milwaukee consciously disregarded Reuben's rights. The record reveals that, but for an initial six-hour investigation by Mercer, Milwaukee did not attempt to gather the information it required for assessing Reuben's claim until some sixteen months had passed from the time it was notified of the claim. Milwaukee breached its affirmative duty to conduct an adequate investigation. The award of punitive damages was justified.

Milwaukee also argues that its motion for judgment notwithstanding the verdict should have been granted on the basis that the verdict form combined the awards for compensatory damages, punitive damages, and attorney fees. As discussed above, we find no error in combining these elements of damage and, therefore, the trial court did not commit error in overruling Milwaukee's motion on this basis.

We also find not well taken Milwaukee's argument that the trial court erred in denying Milwaukee's motion prior to Milwaukee's having an opportunity to file its reply brief. We have reviewed Milwaukee's reply brief and conclude that the trial court was still correct in denying Milwaukee's motion for a judgment notwithstanding the verdict. Accordingly, Milwaukee suffered no prejudice in the trial court's denial of its motion before the time for a reply brief had expired.

Accordingly, we find Milwaukee's sixth assignment of error not well taken.

 In its seventh assignment of error, Milwaukee argues that the trial court abused its discretion by awarding attorney fees to Reuben. Specifically, Milwaukee asserts that the Furrs' counsel relied solely upon a contingency fee agreement as the basis for their attorney fees and that the trial court did not

determine whether the attorney fees were warranted and, if so, the reasonable value thereof.

After the jury awarded attorney fees, the trial court conducted a hearing on April 2, 1997 to determine the amount of attorney fees to be awarded. A contingency fee agreement had been entered into between Reuben and his counsel. Milwaukee objected to the use of the contingency fee agreement as a basis for awarding attorney fees. Reuben's counsel therefore submitted a reconstructed time chart reflecting the time that was spent on the action against Milwaukee. Milwaukee asserts that this was not an itemized billing. However, Reuben's counsel testified that the time chart was a conservative calculation of the hours spent pursuing Reuben's claim against Milwaukee. Counsel also testified that wrongful death cases are complex and that it takes years to study, follow, and maintain that area of law because of the constant shifting and changing of the law. Reuben's counsel's time chart reflected a total of seventy in-court hours and 380.5 hours spent outside court. The hourly rate charged for in-court hours was $200 per hour, for a subtotal of $14,000, and the hourly rate charged for all other hours was $150 per hour, for a subtotal of $57,075, thereby totaling $71,075. Counsel attested that the hours were spent dealing with the issues raised by Milwaukee and were reconstructed to the best of his ability.

The trial court found that "[p]laintiff's attorneys presented to the Court an itemized billing, which they represented was actual, conservative, reasonable, and necessary in the interest of justice," and awarded $71,075 in attorney fees.

▆▆▆▆▆ Initially, we note that an insurer that acts in bad faith is liable for those compensatory damages, including attorney fees, flowing from the bad faith conduct of the insurer and caused by the insurer's breach of contract. *Zoppo, supra,* 71 Ohio St.3d at 558, 644 N.E.2d at 402. Generally, an award of attorney fees will not be overturned on appeal absent an abuse of discretion. See *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 648 N.E.2d 488, syllabus.

▆▆▆ In Ohio, in order to determine reasonable attorney fees, the trial court must determine that an award of fees is necessary and proper. In so doing, the trial court must consider " '(1) the time and labor involved in maintaining [the] litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of [the] litigation.' " *Hutchinson v. J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St.3d 195, 200, 17 OBR 432, 437, 478 N.E.2d 1000, 1005, quoting *State ex rel. Montrie Nursing Home, Inc. v. Creasy* (1983), 5 Ohio St.3d 124, 128, 5 OBR 258, 261–262, 449 N.E.2d 763, 767. See, also, *Villella v. Waikem Motors, Inc.* (1989),

45 Ohio St.3d 36, 41, 543 N.E.2d 464, 469–470, modified on other grounds, *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 659, 635 N.E.2d 331, 348. Additional factors to consider are "[t]he fee customarily charged in the locality for similar legal services" and "[t]he amount involved and the results obtained." *Villella* at 41, 543 N.E.2d at 470, citing DR 2–106(B), Code of Professional Responsibility.

Our review of the trial court's decision shows that the relevant factors were considered. Accordingly, we find that the trial court did not abuse its discretion in awarding Reuben attorney fees in the amount of $71,075. Milwaukee's seventh assignment of error is therefore found not well taken.

■ In its eighth assignment of error, Milwaukee argues that the trial court erred in proceeding to trial by jury when the parties had previously agreed in writing to waive the jury demand. Civ.R. 39(A) states that a jury demand may be waived "by written stipulation filed with the court." Milwaukee asserts that appellees waived their jury demand in an October 31, 1995 motion, which stated:

"Now come plaintiffs, and hereby move the Court for entry of judgment on the issue of liability, against defendant Mark A. Robinson, Administrator of the Estate of Alyson Bond Wilson, liability having been admitted in said defendants' Answer, and request the Court to set the determination of damages down for hearing before the Court. Plaintiffs' jury demand is hereby withdrawn so that the matter may be tried to the Court."

On February 6, 1997, Milwaukee filed a notice of consent to plaintiffs' withdrawal of jury demand, in accordance with Civ.R. 38(D) and 39(A), stating that "[p]laintiff, through his counsel, expressly and unequivocally withdrew his jury demand" in his October 31, 1995 motion.

■ Civ.R. 39(A) contains the exclusive method of waiving a trial by jury. *Carl Sectional Home, Inc. v. Key Corp.* (1981), 1 Ohio App.3d 101, 103, 1 OBR 403, 405–406, 439 N.E.2d 915, 918–919. Appellees' October 31, 1995 motion waived a jury only for purposes of determining damages owed by Mark A. Robinson, administrator of the estate of Alyson Bond Wilson. There was no indication that Reuben Furr waived his jury demand with respect to his breach of contract and bad faith causes of action against Milwaukee. Accordingly, the trial court did not err in submitting the matter to a jury. Milwaukee's eighth assignment of error is therefore found not well taken.

■ In its tenth assignment of error, Milwaukee argues that the trial court prejudiced Milwaukee when it did not submit Milwaukee's proposed interrogatories to the jury. Milwaukee submitted twelve interrogatories for submission to the jury prior to closing arguments; they read as follows:

"1. Do you find by a preponderance of the evidence that Plaintiff's decedent, Levi Furr, Jr., owned the motor vehicle that Alyson Bond Wilson was driving at the time of the fatal accident?

"2. Do you find by a preponderance of the evidence that Plaintiff Reuben Furr misinformed Defendant, Milwaukee Guardian Insurance Co., regarding the ownership of the motor vehicle that Alyson Bond Wilson was driving at the time of the fatal accident?

"3. Do you find by a preponderance of the evidence that Plaintiff, Reuben Furr, notified Defendant, Milwaukee Guardian Insurance Co., of his claim for uninsured motorist benefits in a reasonably prompt manner?

"4. Do you find by a preponderance of the evidence that there was a reasonable excuse for the failure of Plaintiff, Reuben Furr, to notify Defendant, Milwaukee Guardian Insurance Co., of his claim for uninsured motorist benefits in a reasonably prompt manner?

"5. Do you find by a preponderance of the evidence that Plaintiff, Reuben Furr, reasonably determined whether there was any policy of motor vehicle insurance that listed Plaintiff's decedent, Levi Furr, Jr., as a named insured on November 18, 1993?

"6. Do you find by a preponderance of the evidence that Plaintiff, Reuben Furr, reasonably determined whether there was any policy of motor vehicle insurance in effect on November 18, 1993, that covered the motor vehicle in which Plaintiff's decedent, Levi Furr, Jr., was injured?

"7. Do you find by a preponderance of the evidence that any proof of loss submitted by Plaintiff, Reuben Furr, to Defendant, Milwaukee Guardian Insurance Co., provided sufficient information from which the insurance company could determine the amount of the claim for uninsured benefits.

"8. Do you find by a preponderance of the evidence in the breach of contract claim of Plaintiff, Reuben Furr, that Alyson Bond Wilson was negligent at the time of her operation of the motor vehicle that was involved in the accident on November 18, 1993?

"9. Do you find by a preponderance of the evidence in the breach of contract claim of Plaintiff, Reuben Furr, that the negligence of Alyson Bond Wilson constituted more than fifty percent (50%) of the total negligence?

"10. Do you find by a preponderance of the evidence that Plaintiff, Reuben Furr, was legally entitled to recover for the injury sustained by Plaintiff's decedent, Levi Furr, Jr., on November 18, 1993?

"11. Do you find by a preponderance of the evidence that Defendant, Milwaukee Guardian Insurance Co., reasonably complied with the requirements of Ohio Administrative Code Section 3901–1–54?

"12. Do you find by a preponderance of the evidence that there was collusion between the special administrator of the Estate of Alyson Bond Wilson and Plaintiff, Reuben Furr, or anyone acting on Reuben Furr's behalf?"

No interrogatories were submitted to the jury. On appeal, however, we are to consider only the interrogatories concerning the bad faith claim.

Civ.R. 49(B) states in part:

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."

Although Civ.R. 49(B) requires a trial court to submit interrogatories to the jury once it is requested to do so, the court still retains limited discretion "to reject submission of the interrogatories where the request is untimely or the proposed interrogatories are ambiguous, confusing, redundant, or otherwise legally objectionable." *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 107, 592 N.E.2d 828, 836. "Proper jury interrogatories must address determinative issues and must be based upon trial evidence." *Id.* See, also, *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 15, 615 N.E.2d 1022, 1028, overruled on other grounds, *Fidelholtz v. Peller* (1998), 81 Ohio St.3d 197, 690 N.E.2d 502. Civ.R. 49(B) does not require submission of an interrogatory that is merely probative or evidentiary in nature. *Ziegler* at 15, 615 N.E.2d at 1028, citing *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 165, 71 O.O.2d 164, 166, 327 N.E.2d 645, 648–649. Determinative issues are "ultimate issues which when decided will definitely settle the entire controversy between or among the parties, so as to leave nothing for the court to do but to enter judgment for the party or parties in whose favor such determinative issues have been resolved by the jury." *Ziegler* at 15, 615 N.E.2d at 1028. See, also, *Weidner v. Blazic* (1994), 98 Ohio App.3d 321, 329, 648 N.E.2d 565, 570.

After having reviewed the rejected interrogatories, we find that they did not address determinative issues and were confusing. The interrogatories submitted were apparently intended for both the breach-of-contract and the bad faith claims. However, but for two interrogatories that stated that they applied to the

breach-of-contract claim, we find that the interrogatories were ambiguous regarding whether they applied to the breach-of-contract or the bad faith claim. Moreover, the issue before the jury on the bad faith claim was whether Milwaukee had a reasonable justification for refusing Reuben's uninsured motorist claim. Therefore, we find that the interrogatories did not address determinative issues. See *Ramage* and *Ziegler, supra.*

Accordingly, we find that the trial court did not abuse its discretion in not submitting Milwaukee's proposed jury interrogatories to the jury. Milwaukee's tenth assignment of error is therefore found not well taken.

Milwaukee asserts in its eleventh assignment of error that even if no independent assignment of error is sufficient to justify reversal, the cumulative effect of the errors committed by the trial court denied Milwaukee a full, fair, and impartial trial. Milwaukee correctly points out that the cumulative effect of errors occurring in the trial court's evidentiary rulings can deprive a party of a full and fair hearing. *Lamberjack v. Gyde* (Nov. 19, 1993), Ottawa App. No. 92–OT–034, unreported, 1993 WL 476313. However, unlike *Lamberjack*, upon a thorough examination of the record, we have not found that the trial court erred to Milwaukee's prejudice in any of the alleged assignments of error. Accordingly, we find no cumulative effect of errors that would have violated Milwaukee's right to a full and fair hearing. Milwaukee's eleventh assignment of error is therefore found not well taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed in part. We order the award of interest in the amount of $1,075 to be vacated and affirm the remainder of Reuben Furr's judgment against Milwaukee Guardian Insurance Company. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed in part.*

SHERCK, J., concurs.

GLASSER, J., dissents.

GLASSER, Judge, dissenting.

I respectfully dissent in part from the opinion of the majority in finding that appellant's second assignment of error is not well taken.

The second assignment of error alleges that the trial court utilized the incorrect standard as to whether Milwaukee breached its duty to act in good faith. Levin was permitted to testify in regard to the appropriate time frame for

handling insurance claims, specifically referring to Ohio Adm. Code 3901–1–54. Additionally, the trial court submitted an instruction to the jury based on the Ohio Administrative Code. The majority acknowledges that this is an incorrect instruction but discounts its effect, since the jury was not instructed that a violation of the Ohio Administrative Code would *per se* amount to a breach of good faith. I disagree. Although the trial court may not have specifically used the term *per se,* the prejudicial effect on the jury would still be significant. The testimony of Levin and the erroneous instruction created a misleading and prejudicial effect on the jury.

I would, therefore, find that plain error occurred, reverse the trial court's determination of bad faith, and order a new trial in this matter.