JOURNAL ENTRY and OPINION
{¶ 1} Appellant Susan Corsaro, Executrix of the Estate of Nora Pae, appeals the trial court's directed verdict in favor of ARC Westlake Village, Inc., ("Westlake Village."). On appeal, Corsaro assigns the following errors for our review:
 {¶ 2} "I. The trial court erred in granting Westlake Village's motion for directed verdict on the estate's breach of contract claim."
 {¶ 3} "II. The trial court erred in directing a verdict in favor of Westlake Village on the estate's negligence claim."
 {¶ 4} Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.
 {¶ 5} Susan Corsaro's mother, Nora Pae, was a resident of Westlake Village's independent living facility. In December 2001, while visiting with her mother, Susan Corsaro was approached by Nancy Zuba, the Director of the Companion Services program at Westlake Village, who told Corsaro that on several occasions she had observed Pae asking directions to return to her room from the dining room. Zuba explained that for an additional fee, a Companion Services employee could escort Pae to and from dinner, until Pae became familiar with the layout of the facility.
 {¶ 6} After discussing the program with her husband, Corsaro left a voice mail message for Zuba on January 9, 2002, indicating that she wanted a Companion Services employee to walk Pae to and from the dining room. Further, Corsaro wanted the service to begin that day and requested that Westlake Village send her a bill for the services.
 {¶ 7} On the evening of January 9, 2002, Corsaro was visiting her mother, when a Companion Services employee, Susan Reddish, came to escort Pae to dinner. Reddish escorted Pae from her third floor apartment to the dining room on the first floor of the facility.
 {¶ 8} After Pae was finished eating, Reddish returned to escort her back to her apartment. They left the dining room and walked toward the elevator. As they approached the elevator, Pae allegedly indicated to Reddish that from there, she could find her way back to her apartment. Unaccompanied by Reddish, Pae boarded the elevator to the third floor.
 {¶ 9} Upon reaching the third floor, Pae exited the elevator, but then fell after walking a few feet. Pae was taken to the emergency room, where it was determined she suffered a fractured right wrist. Pae underwent treatment and surgery, to repair the fractured bones, but to no avail. Pae and her family decided Pae would forgo any further surgery because of her age and medical condition.
 {¶ 10} Subsequently, in March 2002, Pae moved from the independent living wing of Westlake Village to the assisted living wing of the facility. On June 4, 2002, an assisted living nurse found Pae lying on the bathroom floor. Pae was taken to the hospital, where it was determined she had broken her pelvis and was in complete renal failure. After two weeks in the hospital, Pae was moved to Bradley Bay Nursing Home for rehabilitation.
 {¶ 11} On the night of June 26, 2002, Pae was taken to the hospital where it was determined that she had a major bowel obstruction. Because of Pae's broken pelvis, she was unable to undergo surgery and it was determined that even if surgery was attempted, she would not recover. Pae was subsequently taken back to the nursing home, where she later died.
 {¶ 12} On May 7, 2003, Corsaro as executrix of Pae's estate, filed a complaint against Westlake Village, alleging negligence. She specifically alleged that Pae fell and broke her wrist due to the failure of the Westlake Village employee to escort Pae from the dining room to her apartment. Corsaro also claimed Westlake Village was liable for this conduct because it was negligent in the training and supervision of its employees. Further, Corsaro claimed the fractured wrist Pae sustained as a result of her fall on January 9, 2002, ultimately caused her death.
 {¶ 13} On July 9, 2003, Corsaro filed an amended complaint alleging three additional counts, namely: nursing home negligence, deceptive trade practices, and breach of the terms of a written contract. However, on October 13, 2003 and February 23, 2004, respectively, Corsaro dismissed the nursing home negligence and the deceptive trade practices claims. The matter proceeded to a jury trial on the remaining counts of negligence and breach of contract.
At the close of Corsaro's case in chief, the trial court granted Westlake Village's motion for a directed verdict on both counts. Corsaro now appeals.
 {¶ 14} The standard of review in this case is set forth in Civ.R. 50(A)(4). Civ.R. 50(A)(4) states a motion for directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, the reviewing court finds that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the non-moving party.[1]
 {¶ 15} A motion for directed verdict raises the legal question of whether the plaintiff presented evidence legally sufficient to submit the case to the jury.[2] When ruling on a motion for a directed verdict, the court must not consider the weight of the evidence nor the credibility of the witnesses.[3] "If there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied."[4] However, when the trial court after construing the evidence most strongly in favor of the non-moving party, finds that reasonable minds could reach but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court must grant the motion.[5]
 {¶ 16} As to the legal issues involved in this matter, we note that subsequent acts and agreements may modify the terms of a contract, and unless otherwise specified, neither consideration nor a writing is necessary.[6] Oral agreements to modify a prior written agreement are binding if based upon new and separate legal consideration or, even if gratuitous, are so acted upon by the parties that a refusal to enforce the oral modifications would result in fraud to the promisee.[7]
 {¶ 17} In the first assigned error, the estate argues the trial court erred in granting a directed verdict on the breach of contract claim. The trial court properly dismissed the breach of contract allegation because the estate failed to show breach of contract as well as damages. The record indicates Pae chose an independent living facility, where she was free to come and go in the community and even to leave the community at any time on her own accord, without assistance from anyone at Westlake Village. Further, Corsaro testified as follows regarding Pae's decision to reside at Westlake Village:
"My husband even said, you know, `We'd love for you to come live withus,' but she didn't want to be a burden. She's like, `I swear I'd neverdo that to my kids, no way.'
* * *
"And my other brother who lives in southern Ohio even offered to put ona big addition. He's like `Mom, you can live with me because there's sixof us.' And she was like adamant. `No way. I want to be as independent asI can.'"[8]
 {¶ 18} Finally, Corsaro testified that when she broached the subject of being escorted to and from dinner, Pae said: "Oh, I don't know. I don't think I need that. I'll get the hang of it."[9]
 {¶ 19} Here, the evidence indicates Pae exercised her right to refuse any contractual services and to travel within Westlake Village unescorted. Pae's decision to continue unescorted to her apartment relieved Westlake Village of any obligation to escort her to her apartment.
 {¶ 20} We also find no damages resulted. It is undisputed that Westlake Village agreed to provide an aide to escort Pae to and from the dining room, and Corsaro agreed to pay the additional cost for this service. Generally, a plaintiff must present evidence on several elements to successfully prosecute a breach of contract claim. Those elements include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.[10] A claimant seeking to recover for breach of contract must show damage as a result of the breach.[11] Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach.
 {¶ 21} Compensatory damages are frequently classified as either general damages or special damages. General damages are damages that naturally and necessarily result from a wrongful act and which are directly traceable to, and the probable and necessary result of, injury caused by that act.[12] Special damages are damages of such a nature that they do not follow as a necessary consequence of the injury complained of,[13] though they may in fact naturally flow from that injury.[14]
 {¶ 22} Here, the damages Corsaro seeks falls into neither of the two categories. First, Pae's fall was neither a natural consequence of Reddish failing to escort Pae back to her apartment, nor was the possibility of injury to Pae a failure to perform under the agreement. The record is devoid of any indication Pae fell because she was lost. Assuming that, the "lost" factor or "distracted" factor could be an inference from the fall. At trial, John Regan, a fellow resident of Westlake Village testified he saw Pae as the two approached the elevator on the first floor. He spoke with Pae as they rode the elevator to the third floor. Regan testified Pae never asked him for directions, nor did she appear to be unsteady.[15] Also, Corsaro testified that on November 29, 2001, while she and Pae were shopping, Pae had a dizzy spell and had to be taken to the emergency room. Pae was later diagnosed with syncope, a temporary loss of consciousness due to low blood pressure. Syncope causes dizziness and fainting.[16] Because of this medical condition, Pae could have fallen even if the Westlake Village employee had escorted her back to her apartment after dinner. Further, the record reveals neither Corsaro nor Pae disclosed this diagnosis to Westlake Village.
 {¶ 23} Second, Corsaro did not seek to change the terms of the contract to one that focused on a special medical need. The agreement rests solely on assisting Pae in becoming familiar with the layout of the facility by escorting her to and from her room, an agreement that she could alter if she so desired. Trial testimony revealed Westlake Village recommended the door-to-door escort service because Pae frequently asked for directions to get back to her apartment, and Corsaro engaged the service to facilitate Pae learning her way around the facility. There is no indication that it was necessary for Pae's hand to be held when being escorted back and forth to the dining hall or that she needed assistance in walking.
 {¶ 24} On the above record, Corsaro has not proven contract damages; thus, she cannot sustain a breach of contract claim against Westlake Village. Pae's falling and sustaining bodily injury is not the natural consequence of Reddish not escorting her back from dinner. Accordingly, the directed verdict in favor of Westlake Village on Corsaro's breach of contract claim was proper. Corsaro's first assigned error is overruled.
 {¶ 25} In her second assigned error, Corsaro argues the trial court erred in directing a verdict in favor of Westlake Village on the estate's negligence claim. We disagree.
 {¶ 26} A negligence claim requires proof of the following elements: duty, breach of duty, causation, and damages.[17] As discussed in Corsaro's first assigned error, causation was not established. Corsaro's negligence claim is based on a contractual duty. At trial, the following exchange took place:
"Q. * * * So my question is this. This suit is about Susan Reddish'snegligence in part because she didn't walk your mother all the way backto her doorstep. That's your claim, correct?
 Yes.
 What I want to find out from you, was Susan Reddish negligent becauseshe failed to observe your mother having problems walking?
 Was she negligent? No. She was negligent because she did not completeher task.
 I want a yes or no. So she wasn't negligent because she couldn'tobserve that your mother needed physical help walking.
 She didn't need physical help walking.
 So she didn't fail to observe that and help your mother to walk.
 We hired her to give directions."[18]
 {¶ 27} Based on the above exchange, the only possible duty that Westlake Village had to Pae was contractual. However, it is well established that a breach of contract alone will not give rise to an action in tort, regardless of the tortfeasor's motive.[19] It has long been the general rule that, when the only relation between the parties is contractual, the liability of one to the other in a tort action must arise from some positive duty which the law imposes because of the relationship, or because of the negligent manner in which some act which the contract provides for is done; and the mere omission to perform a contract obligation is never a tort unless the omission is also the omission to perform a legal duty. Thus, a negligence claim cannot be maintained unless the defendant's conduct constituted the breach of a duty imposed by law, apart from it being a breach of an obligation created by agreement of the parties, either express or implied.[20]
 {¶ 28} Here, Corsaro contends Pae's fall was a direct and proximate result of Reddish's failure to escort Pae back to her apartment after dinner. This is a duty imposed by the agreement between Corsaro and the Companion Services department of Westlake Village. Reddish's duty, however, was only contractual; therefore, Corsaro is barred from asserting a negligence claim against Westlake Village under the instant facts. Accordingly, the directed verdict in favor of Westlake Village on Corsaro's claim was proper. Corsaro's second assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, JR., J., and Cooney, J., concur.
[1] Wagner v. Midwestern Indemnity (1998), 83 Ohio St.3d 287, 294.
[2] Id.
[3] Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 679.
[4] Id.
[5] Civ. 50(A)(4).
[6] Smaldino v. Larsick (1993), 90 Ohio App.3d 691, 698.
[7] See Citizens Fed. Bank v. Brickler (1996), 114 Ohio App.3d 401,407, citing to Mehurin v. Stone (1881), 37 Ohio St. 49, 57-58; SoftwareClearing House, Inc. v. Intrak, Inc. (1990), 66 Ohio App.3d 163, 172.
[8] Tr. at 334-335.
[9] Tr. at 364.
[10] Am. Sales, Inc. v. Boffo (1991), 71 Ohio App.3d 168, 175.
[11] Metro. Life Ins. Co. v. Triskett Illinois, Inc. (1994),97 Ohio App.3d 228, 235; Logsdon v. Ohio Northern Univ. (1990),68 Ohio App.3d 190, 195.
[12] Siegle v. Lee (1948), 54 Ohio L. Abs. 408.
[13] Gennari v. Andres-Tucker Funeral Home, Inc. (1986),21 Ohio St.3d 102.
[14] Combs v. Simkow (Nov. 21, 1983), 12th Dist. No. CA82-12-116.
[15] Tr. at 224.
[16] Tr. at 439.
[17] Anderson v. St. Francis-St. George Hospital, Inc. (1996),77 Ohio St.3d 82 at 84.
[18] Tr. at 515-516.
[19] Ameritrust Co. Nat'l Ass'n v. West Am. Ins. Co. (1987),37 Ohio App.3d 182, 186, citing Hoskins v. Aetna Life Ins. Co.
(1983), 6 Ohio St.3d 272; Ketcham v. Miller (1922), 104 Ohio St. 372; see also Olbrich v. Shelby Mutual Ins. Co. (1983), 13 Ohio App.3d 423.
[20] Bowman v. Goldsmith Bros. Co. (1952), 63 Ohio L. Abs. 428 at 431.