OPINION *Page 2 
{¶ 1} Plaintiff-appellant, Bradley Price, appeals from two Mahoning County Common Pleas Court judgments, one awarding summary judgment in favor of defendant-appellee, Grange Indemnity Insurance Company (Grange), and the other awarding summary judgment in favor of defendant-appellee, American Community Mutual Insurance Company (American).
 {¶ 2} On January 27, 2003, Price was injured in an automobile accident while riding as a passenger in Thomas Dillon's vehicle. As a result, Price was hospitalized and incurred medical expenses in excess of $10,000.
 {¶ 3} At the time, Dillon was insured under an automobile policy issued by Erie Insurance Company (Erie policy). The Erie policy provided medical payments (med-pay) coverage applicable to Price with a $5,000 limit.
 {¶ 4} Price was insured under an automobile policy issued by Grange (Grange policy). The Grange policy provided med-pay coverage with a $5,000 limit. Price was also insured under an individual health insurance policy issued by American (American policy).
 {¶ 5} Price filed a complaint against Dillon, Grange, and American on January 10, 2005, alleging that he sustained injuries as a result of Dillon's negligence. Price further alleged that Grange made payments under the med-pay coverage of the Grange policy and, thereby became the real party in interest as to those payments. Additionally, Price alleged that Grange refused to make the medical payments to him and that Grange instead made the payments to an improper third party (American), in breach of the Grange policy and in bad faith. And Price asserted an uninsured/underinsured motorist claim against Grange. Furthermore, Price alleged that American paid his expenses resulting from the accident and that American became the real party in interest as to that amount. Finally, Price alleged that American improperly sought subrogation and/or *Page 3 
reimbursement from Grange thereby usurping Price's right to directly collect this money for payment of medical expenses. He asserted that American acted in bad faith in doing so.
 {¶ 6} American filed a cross-claim for subrogation against Dillon and Grange for $686.46, which was the amount that remained un-reimbursed for payments it made for Price's medical bills.
 {¶ 7} Grange filed a cross-claim against Dillon for subrogation asserting that it made $5,000 in medical payments for Price. Grange also asserted a counterclaim against Price alleging that American was the real party in interest, that it was required to pay the $5,000 to American, that Price was required to reimburse it the $5,000 it paid to American, and requested a declaratory judgment setting out the relationships between the parties.
 {¶ 8} Grange next filed a motion for summary judgment on all claims involving it. Grange asserted that after Price exhausted Dillon's med-pay limits, it received a letter from American advising it of American's right to the med-pay coverage under the Grange policy. Therefore, Grange stated that it paid the medical coverage payments to American's agent. Grange relied on a coordination of benefits (COB) provision in the American policy, which coordinated the American policy with automobile policies and stated that American was entitled to obtain reimbursement from the automobile policy provider without the consent of the insured.
 {¶ 9} American also filed a motion for summary judgment. It too relied on the COB provision in the American policy.
 {¶ 10} Price subsequently settled with Dillon for $45,000 and dismissed him from the lawsuit. Upon settling with Dillon, Price reimbursed Grange the $5,000 paid in med-pay coverage. Grange then filed an amended motion for summary judgment asserting that Price's settlement with Dillon rendered the remaining claims between it and Price moot. Grange relied on Price's settlement with Dillon and the fact that Price fully reimbursed it in arguing that summary judgment was appropriate. It also dismissed its cross-claim against Dillon. *Page 4 
 {¶ 11} Additionally, Price paid American the $686.46 for medical payments. American subsequently dismissed its cross-claim. American then filed a supplemental motion for summary judgment also asserting that Price's settlement with Dillon and subsequent payment to American precluded Price from arguing that American engaged in improprieties with regard to collecting its subrogation claim from Grange.
 {¶ 12} In separate judgment entries, the trial court granted both Grange's and American's motions for summary judgment. As to Grange, the court concluded that Price received full compensation for his injuries from the tortfeasor, including payment for all medical expenses. It found that Grange was the real party in interest with respect to medical payments made on Price's behalf and Price had reimbursed Grange for those payments. The court further found the subrogation issue moot. As to American, the court found that the American policy expressly and unambiguously permitted American to seek reimbursement directly from Price's medical payments carrier.
 {¶ 13} Price filed two timely notices of appeal, one from the judgment in favor of Grange and one from the judgment in favor of American. This court consolidated the two appeals.
 {¶ 14} Price raises four assignments of error, two that deal with Grange and two that deal with American. We will address each appellee separately. However, all assignments of error share the summary judgment standard of review.
 {¶ 15} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. Am. Industries Resources Corp. (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsonsv. Flemming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive *Page 5 
law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc,Inc. (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248,106 S.Ct. 2505, 91 L.Ed.2d 202.
 {¶ 16} It is with this standard in mind that we move on to consider Price's assignments of error.
 GRANGE {¶ 17} Price's first assignment of error states:
 {¶ 18} "THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT TO GRANGE ON THE CLAIMS OF BREACH OF CONTRACT AND BAD FAITH WHERE UNCONTROVERTED EVIDENCE ESTABLISHED THAT GRANGE FAILED OR REFUSED TO PROCESS AND PAY PRICE'S MED PAY CLAIM FOR SEVEN MONTHS."
 {¶ 19} Price asserts that Grange failed to process and pay his med-pay claim for seven months after he exhausted the primary med-pay coverage with Erie Insurance. Price argues that this delay constituted breach of contract and bad faith. He contends that the fact that he settled with the tortfeasor in a timely manner should not deprive him of his right to good faith and fair dealing by his insurance carrier. Price relies on Ohio Admin. Code 3901-1-54(G), which provides in part:
 {¶ 20} "(G) General standards for settlement of claims
 {¶ 21} "* * *
 {¶ 22} "(3) Except as otherwise provided by policy provisions, an insurer shall settle first party claims upon request by the insured with no consideration given to whether the responsibility for payment should be assumed by others.
 {¶ 23} "* * *
 {¶ 24} "(6) An insurer shall tender payment to a first party claimant no later than ten days after acceptance of a claim if the amount of the claim is determined and is not in dispute, unless the settlement involves a structured settlement, action by a probate court, or other extraordinary circumstances * * * ."
 {¶ 25} Based on this language, Price argues that Grange had a duty to pay him his med-pay coverage within ten days of submitting his claim, after he had *Page 6 
exhausted the primary coverage. Furthermore, Price asserts that his cause of action for bad faith is independent of his breach of contract claim. He argues that because the uncontroverted evidence established that Grange did not pay his med-pay claim for seven months without justification, he was entitled to have a trier of fact determine whether Grange handled his claim in bad faith.
 {¶ 26} For support, Price relies on Craven v. Nationwide Mut. Ins.Co. (March 11, 1998), 9th Dist. No. 18490. In Craven, Nationwide insured both the tortfeasor and the claimant. While the personal injury claim was pending, Nationwide did not issue payment to the claimant under the med-pay provision. After settling the tort claim, the claimant sued Nationwide for its failure to pay the med-pay claim asking for specific performance and raising a claim for bad faith. Nationwide moved for summary judgment arguing that the subrogation clause in the policy entitled Nationwide to reimbursement for any medical expenses it paid to the claimant. It asserted that the claimant was fully compensated by the settlement with the tortfeasor. It further argued that it was reasonable to withhold paying the med-pay claim until the personal injury claim was resolved instead of paying the med-pay claim separately and subsequently seeking reimbursement from the personal injury award. The trial court granted summary judgment.
 {¶ 27} The appellate court reversed finding that the claimant had presented evidence that gave rise to a genuine issue of material fact as to whether Nationwide acted in bad faith in failing to pay the med-pay claim. It reasoned:
 {¶ 28} "In section III, we refused to permit Craven to obtain a double recovery of her medical bills based solely on the fortuitous circumstance that she happened to share an insurer with the tortfeasor. We also refuse to allow Nationwide to take advantage of this same fortuitous circumstance by withholding legitimate medical payments solely to await the subsequent resolution of a related personal injury claim.
 {¶ 29} "Therefore, without concluding that Nationwide's `coming to a head all at once' justification for withholding medical payments is per se unreasonable, we believe that it may not be reasonable if the claims are `coming to a head all at once' solely because the insurer refuses to pay the med-pay claim until the personal injury *Page 7 
claim is resolved. Such conduct may constitute a violation of the insurer's duties of good faith and fair dealing.
 {¶ 30} "Although Nationwide argues that it was shear [sic] coincidence that both claims came to a head at once, Craven has offered sufficient evidence to the contrary to avoid summary judgment." Id.
 {¶ 31} Price argues that like the claimant in Craven, he presented evidence of Grange's extended delay in paying his med-pay claim. He argues that he also presented evidence that as soon as American sought recovery of the med-pay money, Grange immediately paid the full amount to American.
 {¶ 32} An insurer has a duty to act in good faith towards its insured in carrying out its responsibilities under the insurance policy.Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272,452 N.E.2d 1315, paragraph one of the syllabus. The Ohio Supreme Court has set out the standard to determine whether an insurer has breached its duty to its insured to act in good faith: "`[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor [sic.].'" Zoppo v. Homestead Ins.Co. (1994), 71 Ohio St.3d 552, 554, 644 N.E.2d 397, quoting StaffBuilders, Inc. v. Armstrong (1988), 37 Ohio St.3d 298, 303,525 N.E.2d 783. The Court also noted that intent is not an element of the reasonable justification standard. Id. at 555.
 {¶ 33} Price gave Grange notice of his potential med-pay claim by letter dated March 17, 2003. On March 18, 2004, Price gave Grange notice that he had exhausted the primary med-pay coverage of Dillon's insurer. Grange received a letter dated September 27, 2004, from American's agent advising it of the COB provision and requesting payment directly from Grange for Price's insurance limits. Grange paid $5,000, in exhaustion of the med-pay limits, directly to American in October 2004.
 {¶ 34} Grange has not pointed to any circumstances in an attempt to "furnish reasonable justification" for its refusal to pay Price's claim for over six months. Instead, it merely contends that it paid American, who was entitled to be reimbursed, *Page 8 
and asserts that all parties have been fully reimbursed and compensated, including Price.
 {¶ 35} But Price has not pointed to any evidence of bad faith, except for the seven-month delay in payment. "[T]o prevail against a motion for summary judgment in a bad faith claim, an insured must put forth evidence that the claim was denied or unreasonably delayed and the insurer had no justification for such denial or delay." Piedmont Corp.v. Midwestern Indem. Co. (Nov. 30, 2000), 6th Dist. No. WD-00-018, citing Tokles Son v. Midwestern Indem. Co. (1992), 65 Ohio St.3d 621,630, 605 N.E.2d 936, overruled in part on other grounds inZoppo, 71 Ohio St.3d 552. A seven-month delay in paying an insurance claim, without more, is not evidence of bad faith. Price has failed to put forth any other evidence of bad faith.
 {¶ 36} Furthermore, Price bases much of his argument for bad faith on Ohio Admin. Code 3901-1-54(G). But Ohio Admin. Code 3901-1-54(B) specifically states in part: "The provisions of this rule are intended to define procedures and practices which constitute unfair claims practices. Nothing in this rule shall be construed to create or imply aprivate cause of action for violation of this rule." (Emphasis added.) And at least two appellate courts have held that Ohio Admin. Code3901-1-54 does not create a private cause of action and, therefore, should not be considered as evidence of bad faith. See Furr v. StateFarm Mut. Auto. Ins. Co. (1998), 128 Ohio App.3d 607, 616,716 N.E.2d 250 (Sixth District found that the Ohio Administrative Code does not create a private cause of action for violation of its rules and, therefore, should not be considered as evidence of bad faith);Griffith v. Buckeye Union Ins. Co. (Sept. 29, 1987), 10th Dist. No. 86AP-1063 ("The Ohio Department of Insurance rules, however, do not create a private cause of action, but are regulatory in nature. Thus, the rules cannot be considered evidence of the applicable standard of bad faith.") Instead of applying to a private cause of action, the Administrative Rule is relevant in determining whether an insurance provider is guilty of an unfair claims practice in an action between the State of Ohio, Department of Insurance and the insurance provider. SeeStrack v. Westfield Companies (1986), 33 Ohio App.3d 336,515 N.E.2d 1005. *Page 9 
 {¶ 37} Additionally, it is undisputed that Price settled his claim with Dillon for $45,000. He then reimbursed Grange the $5,000 for the med-pay payments. Thus, this payment resolved the only outstanding claim between Price and Grange.
 {¶ 38} As an aside, Dillon's insurance carrier paid Price its $5,000 med-pay coverage in March 2004, shortly after the claim was made. Thus, Price did have some funds from which to pay such things as deductibles and co-pays.
 {¶ 39} For these reasons, the trial court did not err in granting summary judgment in favor of Grange on Price's bad faith claim. Accordingly, Price's first assignment of error is without merit.
 {¶ 40} Price's second assignment of error states:
 {¶ 41} "THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT TO GRANGE ON THE BREACH OF CONTRACT CLAIM WHERE THE POLICY OF INSURANCE PERMITTED PAYMENT ONLY TO THE INSURED OR HIS MEDICAL PROVIDER(S), WHERE UNCONTROVERTED EVIDENCE ESTABLISHED THAT, AFTER AN UNEXPLAINED SEVEN MONTH DELAY, GRANGE PAID THE FULL AMOUNT OF PRICE'S MEDICAL PAYMENTS COVERAGE TO AN ENTITY OTHER THAN PRICE OR HIS MEDICAL PROVIDERS."
 {¶ 42} Here, Price first argues that the trial court should not have granted summary judgment on his breach of contract claim because the Grange policy limited payment to Price or his medical providers and Grange paid American instead. Price relies on language in the Grange policy under the "Limit of Liability" section, which states: "We may make payment under this coverage to the insured or to the medial provider on behalf of the insured." (Grange policy, p. B-3). Price notes that the term "medical provider" is not defined in the Grange policy. He contends, however, that based on the term's use throughout the policy, in order to be a "medical provider" it is necessary to render services. Thus, he argues that Grange cannot contend that American is a "medical provider" to whom payment was authorized under the Grange policy. *Page 10 
 {¶ 43} Secondly, Price argues that Grange's payment to American was not valid under American's "third party" reimbursement and subrogation provisions. Price cites to language in the American policy, under the "Third Party Reimbursement" section stating: "This provision applies when a third party or its insurer is liable as a result of the negligence or intentional act of the third party for a loss for which benefits are payable under this policy." (American policy, p. 33). Price argues that Grange is not a "third party" insurer, but instead is a first party insurer, because the med-pay coverage did not arise from Grange's insured's liability for negligence.
 {¶ 44} In order to recover on a claim of breach of contract, the plaintiff must prove (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff. Corsaro v. ARC Westlake Village, Inc., 8th Dist. No. 84858, 2005-Ohio-1982, at ¶ 20.
 {¶ 45} The COB provision in the American policy provides in part:
 {¶ 46} "Plans providing individual or group no-fault auto insurance coverage and plans providing automobile medical payments insurance coverage pay first." (American policy, p. 31).
 {¶ 47} The COB provision further provides:
 {¶ 48} "2. As permitted by law, We may, without the Family Member's consent:
 {¶ 49} "* * *
 {¶ 50} "d. Obtain reimbursement from any such other plan(s), and/or from the Family Member, if We have paid benefits which should have been paid by any such other plan(s). Such reimbursement is a valid payment under the other plan(s)." (American policy, p. 32).
 {¶ 51} Given the plain language of the COB provision, it would appear that Grange properly paid American directly instead of paying Price. However, we must also consider the Grange policy.
 {¶ 52} The Grange policy med-pay provision specifically states: "We may make payment under this coverage to the insured or to the medical provider on *Page 11 
behalf of the insured." (Grange policy, p. B-3). Nowhere does the Grange policy state that it may make payment directly to other insurers who are entitled to reimbursement.
 {¶ 53} Thus, it appears that Grange breached its contract with Price by paying American directly. However, in a breach of contract case, the plaintiff must show damages resulting from the breach; damages are not awarded for a mere breach of contract. Corsaro, 8th Dist. No. 84858, at ¶ 20. Price presented no evidence of damages as a result of Grange's breach. Although Price claimed that he suffered monetary losses as a result of the breach, his counsel admitted at oral argument that no evidence of these losses appears as evidence in the record. Our review is limited to those materials in the record.
 {¶ 54} Additionally, Price had med-pay limits of $5,000 under the Grange policy. Grange paid the $5,000 limit to American for reimbursement since American had paid for Price's medical expenses. Price settled his claim against Dillon for $45,000. He then reimbursed Grange for the $5,000 limits that Grange paid to American. Thus, Price has no remaining claim against Grange.
 {¶ 55} Furthermore, pursuant to the American policy, Price was required to reimburse American for benefits American paid that should have been paid by a plan providing automobile med-pay coverage, in this case Grange. Thus, although Grange should have paid Price the $5,000 in benefits instead of paying American directly, Price did not suffer any damages because had he received the $5,000 from American. Under the terms of the American policy, he would have had to reimburse American this $5,000.
 {¶ 56} Moreover, we can conclude that Grange acted reasonably in paying American directly. When Price accepted the benefits of the American policy, he also accepted the terms of the policy. One of those terms was the COB provision. By agreeing to the COB provision, Price impliedly granted American the right to collect reimbursement directly from Grange. It can follow then that Price also impliedly granted Grange the right to pay American directly.
 {¶ 57} Accordingly, Price's second assignment of error is without merit. *Page 12 
 AMERICAN {¶ 58} Price's third assignment of error states:
 {¶ 59} "THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT TO AMERICAN COMMUNITY BECAUSE TERMS IN THE PRIVATE POLICY OF HEALTH INSURANCE ISSUED TO PRICE THAT PURPORTED TO COORDINATE BENEFITS WITH PRICE'S PRIVATE AUTO POLICY, WHICH WAS NOT A QUALIFYING PLAN UNDER O.R.C. 3902.13 OR ADMINISTRATIVE CODE 3901-1-56, WERE NOT ENFORCEABLE."
 {¶ 60} Price asserts that the COB provision is invalid and cannot be enforced. Price relies on Ohio Admin. Code 3901-1-56(B), which provides that its purpose is to permit "plans" to include a COB provision. It goes on to define a "plan," Ohio Admin. Code 3901-1-56(C)(6)(a), and then states that a "plan" is not
 {¶ 61} "(i) An individual insurance contract, whether single or family coverage;
 {¶ 62} "(ii) An individual subscriber contract, whether single or family coverage;
 {¶ 63} "(iii) An individual contract with a health insuring corporation, whether single or family coverage." Ohio Admin. Code3901-1-56(C)(6)(b).
 {¶ 64} Price contends that the American policy was a private individual policy, and therefore, not a "plan" such that a COB provision was permitted by the Administrative Code. He further notes that the American policy even states, "THIS POLICY IS NOT BEING SOLD AS AN EMPLOYMENT BENEFIT PLAN." (American policy, cover page).
 {¶ 65} Price argues that because the authority to coordinate benefits is specifically conferred to certain types of insurance plans, the use of a COB provision by a type of plan that is not listed is necessarily prohibited. Thus, Price contends that summary judgment to American was improper because American unlawfully coordinated benefits and improperly seized his med-pay benefits.
 {¶ 66} In response, American argues that Price ignores R.C. 3902.11, which it asserts allows individual health insurance policies to be treated as "plans of health coverage" containing COB provisions. American further argues that Ohio Admin. *Page 13 
Code 3901-1-56(C)(6) expressly limits its scope to the definition of a "plan" in a group contract. It asserts that this regulation does not address individual contracts.
 {¶ 67} American is correct. Ohio Admin. Code 3901-1-56(C)(6) specifically states: "`Plan' means a form of coverage with which coordination is allowed. The definition of plan in a group contract
shall state the types of coverage which will be considered in applying the COB provision of that contract." (Emphasis added.) Thus, the definition of "plan" in Ohio Admin. Code 3901-1-56(C)(6) is specifically limited to plans "in a group contract."
 {¶ 68} Furthermore, R.C. 3902.11(B) provides:
 {¶ 69} "(B) `Plan of health coverage' means any of the following ifthe policy, contract, or agreement contains a coordination of benefitsprovision:
 {¶ 70} "(1) An individual or group sickness and accident insurance policy, which policy provides for hospital, dental, surgical, or medical services;
 {¶ 71} "(2) Any individual or group contract of a health insuring corporation, which contract provides for hospital, dental, surgical, or medical services;
 {¶ 72} "(3) Any other individual or group policy or agreement under which a third-party payer provides for hospital, dental, surgical, or medical services." (Emphasis added.)
 {¶ 73} Thus, the Revised Code expressly recognizes that an individual insurance plan may contain a COB provision.
 {¶ 74} Furthermore, Price presented no evidence that American acted in bad faith. American simply acted in accordance with the unambiguous terms of the American policy, which included the COB provision. Pursuant to the COB provision, American was permitted to seek reimbursement from any other insurance plan, without Price's consent, if American paid benefits that should have been paid by another plan. (American policy, p. 32). Additionally, the American policy provided that plans providing automobile med-pay insurance coverage pay first. No party disputes that American initially paid benefits that should have been paid by Grange.
 {¶ 75} Accordingly, Price's third assignment of error is without merit.
 {¶ 76} Price's fourth assignment of error states: *Page 14 
 {¶ 77} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO AMERICAN COMMUNITY WHERE TERMS IN ITS PRIVATE POLICY OF HEALTH INSURANCE ISSUED TO PRICE DEPRIVED HIM OF THE USE OF HIS AUTO MEDICAL PAYMENTS COVERAGE BY UNILATERALLY PURPORTING TO CREATE AN INTENDED BENEFICIARY STATUS AND SUPERIOR RIGHT TO PRICE'S MED PAY COVERAGE, SUCH PROVISIONS BEING UNENFORCEABLE AND VOID AS AGAINST PUBLIC POLICY."
 {¶ 78} Here Price argues that the trial court should not have enforced the COB provision because it provided no means for him to use his private auto med-pay coverage for such things as out-of-pocket expenses, deductibles, and co-pays. He contends that it is unconscionable for American to allow its insureds to pay for auto med-pay coverage that the insured has no right to use because American claims superior entitlement. Price argues that the COB provision serves to turn American into an intended beneficiary with the right to command payment from private first-party coverage of its insureds. He contends that this provision cannot be enforced because American was never an intended beneficiary of the Grange policy. The only beneficiaries intended by the Grange policy, Price argues, were him and his medical providers.
 {¶ 79} For support, Price relies on Choice Care v. State Farm Mut.Auto. Ins. Co. (Feb. 21, 1990), 1st Dist. No. C-880720. In that case, Choice Care filed a declaratory judgment complaint seeking a declaration that State Farm was liable to reimburse it for medical payments it made to common insureds for which State Farm was primarily liable. Choice Care's policy had a COB provision that provided that "a plan with no provision for coordination of benefits has primary responsibility." Thus, State Farm was primarily liable for medical expenses when the insurance coverage of the two policies overlapped. State Farm's med-pay provision stated: "We may pay the injured person or any person or organization performing the services." The trial court granted summary judgment in favor of State Farm and Choice Care appealed.
 {¶ 80} On appeal, the First Appellate District found: *Page 15 
 {¶ 81} "The medical-payment provision of State Farm's policy does not authorize it to pay medical-coverage benefits to a health-maintenance organization such as Choice Care, which has paid for medical expenses of a common insured. State Farm has no contractual relationship with Choice Care. Choice Care has no direct or third-party contractual rights which it may assert against State Farm. The coordination of benefits under Choice Care's policy is a contractual matter between Choice Care and its insureds." Id.
 {¶ 82} The court also pointed to the COB language stating that Choice Care was entitled to "[r]ecover any payments made to members if those payments are duplicated by another plan of benefits." It found that pursuant to this language, Choice Care's remedy was to recover payments which it made, but for which it was not primarily liable, from its insureds. Id.
 {¶ 83} Choice Care is distinguishable from this case. In ChoiceCare, the COB provision stated that Choice Care was entitled to recover payments made to members if the payments were duplicated by another plan. The First District applied this provision as written. It determined that Choice Care's only remedy was to seek payment from its insureds for payments it made, but for which it was not primarily liable. Id.
 {¶ 84} In this case however, the COB provision is different from the COB provision in Choice Care. Here, the COB provision states that American is entitled to obtain reimbursement from other plans or from the family member, without consent, if American paid benefits that should have been paid by another plan. The difference is that the Choice Care COB provision provided a right of reimbursement from its insureds, but the American policy COB provision provides for the right to obtain reimbursement directly from other plans without the family member's consent. Thus, the COB provision here is not invalid based on ChoiceCare as Price asserts.
 {¶ 85} Furthermore, just because the COB provision provides that American can seek direct reimbursement from other insurance plans does not mean that the other insurance plans must pay American. The other insurer, in this case Grange, is bound by its own policy with the insured. Here, the Grange policy provided that it *Page 16 
could only make payments directly to (1) the insured or (2) the insured's medical providers. However, if the Grange policy did not contain this limitation then it would be possible for it to properly pay reimbursement to American under the terms of its own policy. It is entirely possible for an auto insurance policy to contain language providing that it may make payments directly to an insured's health care insurance carrier. If this was the case here, there would be no argument that the COB provision was unenforceable.
 {¶ 86} Therefore, the COB provision is not void as Price alleges. Accordingly, Price's fourth assignment of error is without merit.
 {¶ 87} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1