[Cite as *Yashphalt Seal Coating v. Giura*, 2019-Ohio-4231.]


# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY


YASHPHALT SEAL COATING, LLC,

Plaintiff-Appellee,

v.

THOMAS GIURA,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MA 0107**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2017 CV 01866

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Damian DeGenova*, DeGenova & Yarwood, Ltd., 42 North Phelps Street, Youngstown, Ohio 44503, for Plaintiff-Appellee,  and

*Atty. Charles Dunlap*, 7330 Market Street, Youngstown, Ohio 44512, for Defendant-Appellant.

Dated:
October 8, 2019

**DONOFRIO, J.**

{¶1}     Defendant-appellant, Thomas Giura (individually and as the operator of Tom Giura Automotive Service), appeals the judgment of the Mahoning County Common Pleas Court following a bench trial finding in favor of plaintiff-appellee, Yashphalt Seal Coating, LLC, on appellee's claims of breach of contract and unjust enrichment.

{¶2}     In June of 2015, appellant contacted appellee for the purpose of hiring appellee to repave the parking lot at appellant's place of business.  In July of 2016, appellant and appellee agreed to the terms of the repaving job.  Under the written agreement, appellee was to: remove and haul away the concrete in the lot as needed, bring in gravel where needed, roll and compact the gravel, lay a 1.5 inch base layer of asphalt, roll and compact the base layer, lay a 1.5 inch top layer of asphalt, and roll and compact the top layer.  In exchange, appellant would pay appellee $22,000 for the repaved parking lot.  Appellant made an initial deposit of $10,000, and appellee began work on the repaving job on July 13, 2016.

{¶3}     Appellee completed the repaving job in approximately two weeks.  After the repaving job was completed, appellant complained that the job was not done in a satisfactory manner.  Appellant claimed the parking lot was not a uniform color, the parking lot was not flat, and cracks began to form.  Appellant also claimed that appellee damaged part of his fence, did not replace the concrete parking bumpers on the lot, and removed too much concrete from the original lot.  As a result, appellant refused to pay the remaining $12,000 on the contract.

{¶4}     On April 4, 2017, appellee filed this action in the Youngstown Municipal Court alleging claims of breach of contract and unjust enrichment.  Appellee sought the unpaid $12,000 for the repaving job.  On April 24, 2017, appellant filed an answer and counterclaim as well as a motion to transfer this action to the Mahoning County Common Pleas Court.  The counterclaim raised claims of breach of contract and unjust enrichment on the basis that appellee only partially performed on the contract in an unworkmanlike manner.  The counterclaim sought damages for appellant's damaged fence and the costs of hiring another company to repave appellant's parking lot.  The motion to transfer argued

that appellant's counterclaim exceeded the jurisdictional amount of the Youngstown Municipal Court. On July 19, 2017, the Youngstown Municipal Court granted the motion to transfer the matter to the Mahoning County Common Pleas Court.

{¶5} The matter proceeded to a bench trial before a magistrate on May 22, 2018. Three witnesses testified at trial: Albert Yash (appellee's managing member), Nick Chammas (appellant's engineering expert), and appellant. Yash testified that the discoloration of the parking lot was due to purchasing asphalt from two different suppliers. As for the varying heights of the parking lot, Yash testified that the parking lot was paved thinner near the street and thicker in the middle to allow for water drainage. Yash also testified that the concrete parking bumpers were not immediately replaced because it was too hot to operate the necessary machinery to replace the bumpers without damaging the parking lot. Yash admitted that his work damaged the fence.

{¶6} Chammas testified that he took five core samples of appellant's parking lot after appellee's repaving job. The asphalt samples Chammas took ranged in thickness from 1.56 inches (near the entrance of the parking lot) to 6.01 inches. On average, the asphalt was approximately 3.5 inches thick. Chammas opined that appellee's performance on the repaving job did not meet industry standards.

{¶7} Appellant testified that it cost $787.88 to repair the damage done to his fence. Appellant testified that he did not pay the remaining $12,000 because the asphalt appellee laid was cracking. Appellant also testified that appellee ripped out more concrete than what was originally agreed upon and the cost to replace the excessively removed concrete was $3,456. Finally, appellant testified that, after appellee completed the repaving job, appellant was using the parking lot for its intended purpose.

{¶8} On July 10, 2018, the magistrate issued his findings of fact and conclusions of law. The magistrate found that appellee substantially performed on the contract and therefore, did not breach the contract. The magistrate therefore found that appellant breached the contract by not paying the remaining $12,000. But the magistrate held that appellant was entitled to offset the unpaid invoice amount by $787.88 for the cost to repair the fence as well as $3,456 for the concrete appellee erroneously removed.

{¶9} On July 23, 2018, appellant filed an objection to the magistrate's decision arguing the magistrate's legal and factual conclusions were not supported by the

Case No. 18 MA 0107

evidence. Appellant argued that Chammas' testimony showed that appellee's repaving job did not substantially comply with the contract. Appellee did not file a response to this objection.

{¶10} On September 11, 2018, the trial court overruled appellant's objection and adopted the magistrate's decision in its entirety. Appellant timely filed this appeal on October 4, 2018. Appellant now raises one assignment of error.

{¶11} Appellant's sole assignment of error states:

THE TRIAL COURT ERRED IN ADOPTING THE JULY 10, 2018 MAGISTRATE'S DECISION. JUDGMENT ENTRY T.D. 15, P. 1.

{¶12} Appellant makes two arguments regarding his sole assignment of error. First, appellant argues that the trial court erred in finding appellee did not breach the contract because appellee repaved the parking lot in an unworkmanlike manner. Second, appellant argues that the evidence produced at trial showed that appellee breached the contract by not substantially complying with the terms of the contract.

{¶13} Appellant and appellee disagree on the standard of review this court is to apply in this assignment of error. Appellant argues that a mixed de novo and abuse of discretion standard of review apply because the magistrate misapplied the doctrine of substantial compliance and the trial court erred when it overruled his objection. Appellee argues that a manifest weight of the evidence standard of review applies because appellant is appealing the trial court's judgment after a trial.

{¶14} This court has previously held that a trial court's ruling on an objection to a magistrate's decision after a bench trial is subject to an abuse of discretion standard of review. *RBS Citizens, NA v. Sharp*, 7th Dist. Mahoning No. 13 MA 11, 2015-Ohio-5438, ¶ 5, 18. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶15} The claims relevant to this appeal are the parties' respective breach of contract claims. "In order to recover on a claim of breach of contract, the plaintiff must prove (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff." *Price v. Dillon*, 7th Dist. Nos. 07-MA-

75, 07-MA-76, 2008-Ohio-1178, ¶ 44. Appellee's breach of contract claim alleged appellant breached the contract by not paying the remaining $12,000 on the contract after the repaving job was completed. Appellant's breach of contract claim alleged appellee breached the contract by not performing the repaving job in a workmanlike manner. Appellant raises an argument regarding the trial court's ruling on each of these claims. We will address each individually.

Implied Warranty to Perform in a Workmanlike Manner

{¶16} Appellant's first argument is that the evidence produced at trial shows appellee breached the contract by not repaving the parking lot in a workmanlike manner. The implied duty to perform in a workmanlike manner is explained in the Ohio Supreme Court's decision in *Jones v. Centex Homes*, 132 Ohio St.3d 1, 2012-Ohio-1001, 967 N.E.2d 1199 at ¶ 6:

> A duty is imposed by law upon a builder-vendor of a real-property structure to construct the same in a workmanlike manner and to employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site. If the violation of that duty proximately causes a defect hidden from revelation by an inspection reasonably available to the vendee, the vendor is answerable to the vendee for the resulting damages.

{¶17} The implied warranty to perform in a workmanlike manner requires that those who repair or modify existing tangible goods or property perform the service using proper materials and workmanlike skill and judgment. *Mathis v. Allied Plumbing*, 1st Dist. Hamilton No. C-061005, 2007-Ohio-6661, ¶ 13 citing *Day-Glo Color Corp. v. Brewer-Garrett Co.*, 8th Dist. Cuyahoga No. 87838, 2007-Ohio-159.

{¶18} It is first worth noting that the magistrate's decision and the trial court's judgment entry do not mention the implied warranty to perform in a workmanlike manner. In a construction contract, a breach of the implied duty to perform in a workmanlike manner constitutes a breach of the contract. See *Jarupan v. Hanna*, 173 Ohio App.3d

284, 2007-Ohio-5081, 878 N.E.2d 66, ¶ 19 (10th Dist.). Because the magistrate's decision and the trial court's judgment entry held that appellee did not breach the contract, the rulings implicitly held that appellee did not breach the implied warranty to perform in a workmanlike manner.

{¶19} Appellant argues that his expert at trial, Nick Chammas, produced uncontroverted evidence that appellee's repaving of the parking lot breached this implied warranty. Chammas is a civil engineer who is licensed in Ohio, Pennsylvania, and holds a national certification.

{¶20} Chammas testified that, in his opinion, the repaving of appellant's parking lot did not comply with acceptable industry standards. For example, sand was discovered underneath the parking lot when appellee removed the original concrete and sand is an inappropriate subbase for a parking lot. Chammas testified that the base coat of asphalt should have been at least 2.5 inches. There was also testimony that the parking lot had cracks, the parking lot's asphalt was loose, the parking lot was discolored, and there was pooling of water on the parking lot.

{¶21} But Chammas' testimony was not uncontroverted. Yash testified on direct examination that the parking lot "was in good shape. It was well done." (Tr. 28). Yash had been operating a seal coating, pavement, and concrete business for approximately 13 years. In addition, Chammas testified that sand is an inappropriate subbase for a parking lot and Yash testified that he removed approximately 200 tons of sand when he discovered it under the original parking lot and replaced it with gravel.

{¶22} As for Chammas' testimony, he testified on cross-examination that he specialized in asphalt mixtures for turnpikes, the Ohio Department of Transportation, and the Pennsylvania Department of Transportation. He did not testify that he specialized in parking lots. He also testified that if the parking lot was paved to Ohio Department of Transportation specifications, it would have been more expensive.

{¶23} Additionally, the contract in this case contains a disclaimer that appellee could not guarantee against cracking. Appellee also offered to seal the parking lot for free after appellant complained of cracking and discoloration issues, but appellant refused this service.

**{¶24}** In order for appellant to succeed on his breach of the implied warranty to perform in a workmanlike manner claim, he had to prove damages or loss resulting from appellee's breach of said warranty. See *Price v. Dillon*, 2008-Ohio-1178 at ¶ 44. Appellant submitted evidence of damages he incurred from the fence and the excessively removed concrete and the trial court offset appellee's award by those damages. But there was no evidence of damages appellant incurred due to an alleged breach of the implied warranty to perform in a workmanlike manner regarding the parking lot itself. In fact, appellant testified at trial that he is using the parking lot for its intended purpose.

**{¶25}** Appellant cites *Hanna v. Groom*, 10th Dist. Franklin No. 07AP-502, 2008-Ohio-765, to support his argument that he is entitled to damages due to the issues with the parking lot. In *Hanna*, Hanna and Groom entered into a contract where Hanna would demolish an old driveway and construct a new driveway at Groom's home. *Id.* at ¶ 2. Hanna began demolishing the old driveway once Groom made a down payment. *Id.* During the demolition phase, Hanna or his agent damaged various parts of Groom's home. *Id.* at ¶ 3. Once Hanna completed the new driveway, Groom refused to pay the balance on the contract until Hanna repaired the damage to the home. *Id.* at ¶ 4. Hanna's agents attempted to make repairs but Groom was dissatisfied with the repairs and continued to withhold the final payment. *Id.* at ¶ 5.

**{¶26}** Hanna filed a mechanic's lien as well as a lawsuit raising claims of breach of contract and fraud. *Id.* at ¶ 6. Groom filed a counterclaim raising claims of, among other things, breach of contract. *Id.* After a bench trial, the trial court found for Groom on all claims. *Id.* at ¶ 7. In its ruling, the trial court held that Groom's withholding of final payment until Hanna repaired the damage to the home and Hanna attempting to make repairs to the home amounted to a modification of the contract. *Id.* at ¶ 12.

**{¶27}** Hanna appealed arguing, among other things, the trial court's judgment that the parties modified the original contract was error and therefore, by extension, the judgment that Hanna breached the contract was error. *Id.* The Tenth District held that, because there was competent and credible evidence that Hanna's repairs to the home were inadequate, Hanna breached the contract by failing to complete the repairs in a workmanlike manner. *Id.* at ¶ 23-25.

**{¶28}** *Hanna* is distinguishable. In *Hanna*, Groom offered evidence at trial that the reason he did not pay the balance on the contract was because the cost of repairs to the home would have exceeded the balance on the contract. *Id.* at ¶ 25. In this case, the costs of repair appellant testified about did not exceed the balance on the contract and the trial court offset appellee's award by the cost of the repairs to the damaged fence and the excessively removed concrete. Moreover, the breach of the implied warranty to perform in a workmanlike manner in *Hanna* was due to the repairs to the home, not the construction of the driveway. Based on all of the above, the trial court's judgment on appellant's objection regarding the implied warranty to perform in a workmanlike manner was not an abuse of discretion.

<u>Appellee's Compliance with the Terms of the Contract</u>

**{¶29}** Appellant next argues the trial court's judgment that appellee substantially complied with the contract was error because evidence produced at trial showed the parking lot did not comply with the terms of the contract.

**{¶30}** The terms of the contract are not in dispute. Pursuant to the contract, appellee was to: rip out concrete where needed, haul away the debris, bring in gravel where needed, roll and compact the gravel, pave a 1.5 inch base coat, roll and compact the base coat, pave a 1.5 inch top coat, and roll and compact the top coat. In exchange, appellant would pay appellee $22,000.

**{¶31}** Appellant's argument here is that the evidence produced at trial shows the thickness of the asphalt did not comply with the terms of the contract. Chammas took five core samples (C-1 through C-5) of the parking lot to measure the thickness of the asphalt. Sample C-1 had a base coat of 0.5 inches and a top coat of 3.4 inches. Sample C-2 had a base coat of 1.88 inches and a top coat of 1.1 inches. Sample C-3 had a base coat of 3.28 inches and a top coat of 2.73 inches. Sample C-4 had a base coat of 0.57 inches and a top coat of 2.71 inches. Sample C-5 had a base coat of 0.81 inches and a surface coat of 0.75 inches.

**{¶32}** The magistrate and the trial court held that appellee substantially complied with the contract and, therefore, did not breach the contract because the parking lot was an average of 3.5 inches thick and appellant was using the parking for its intended

<u>Case No. 18 MA 0107</u>

purpose. A "long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract." *Conny Farms, Ltd. v. Ball Resources, Inc.*, 7th Dist. Columbiana No. 12 CO 18, 2013-Ohio-2874, ¶ 22 quoting *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427, 132 N.E. 537 (1922).

**{¶33}** Appellant argues that the trial court should have given more weight to Chammas' testimony because Chammas was the only witness at trial to testify about the asphalt thickness in this case. In support of this argument, appellant cites *Marchese Concrete Co., Inc. v. Brad DeRubba*, 11th Dist. Trumbull No. 2004-T-0119, 2006-Ohio-330.

**{¶34}** In *Marchese*, Marchese agreed to construct a concrete driveway for DeRubba between 4.5 and 5 inches thick in exchange for $5,000. *Id.* at ¶ 4-6. After Marchese completed the driveway, DeRubba refused to pay any part of the contract price. *Id.* at ¶ 2. DeRubba took issue with the driveway on numerous grounds, including that the driveway's thickness was not sufficient. *Id.* at ¶ 10-12. As a result, DeRubba refused to pay any money on the contract. *Id.* at ¶ 6. Marchese then filed an action to recover the contract price.

**{¶35}** At trial, DeRubba presented two pieces of evidence regarding the driveway's thickness: photographs of the edges of the driveway and measurements of the driveway's thickness DeRubba obtained by drilling a hole through the driveway and measuring the depth with a rod or a wire. *Id.* at ¶ 10-11, 20. DeRubba did not present any expert testimony at trial. *Id.* at ¶ 12. Marchese's principal testified at trial that he poured 30 cubic yards of concrete which was enough to make a sufficiently thick driveway. *Id.* at ¶ 5, 28. The Niles Municipal Court found in favor of Marchese in part because it held that DeRubba's method for measuring the driveway's depth was not accurate and not an industry standard. *Id.* at ¶ 21

**{¶36}** DeRubba appealed arguing, among other things, that the trial court's findings of fact and conclusions of law were against the manifest weight of the evidence. *Id.* at ¶ 15-16. The Eleventh District held that the trial court's verdict was against the manifest weight of the evidence for two reasons. First, DeRubba was the only witness to present evidence concerning the driveway's thickness. *Id.* at ¶ 24-29. Second, the trial

court disregarded DeRubba's method for measuring thickness because, according to Marchese, those methods are not the industry standard. *Id.* at ¶ 8, 46. But Marchese was never qualified as an expert and, therefore, could not testify about the industry standard. *Id.* at ¶ 44-46.

**{¶37}** *Marchese* is distinguishable. The issue in *Marchese* was that the trial court expressly disregarded DeRubba's testimony in favor of Marchese's testimony despite the fact that DeRubba was the only witness who measured the driveway's thickness. In this case, the trial court did not disregard Chammas' testimony. Rather, the trial court cited Chammas' findings about the asphalt's thickness in its judgment entry.

**{¶38}** The trial court found that, per Chammas' measurements, the parking lot ranged in thickness from 1.56 inches to 6.01 inches with an average thickness of 3.5 inches. Appellee testified that he paved the parking lot thinner near the street and thicker near the center to allow for water drainage.

**{¶39}** The trial court's judgment is supported by competent and credible evidence. While the asphalt was thinner than what the contract called for in some places, appellee explained that this was done to allow water to drain into the street and not pool in the parking lot or drain into appellant's garage. The trial court's conclusion that the contract called for three inches of asphalt and the parking lot was, on average, 3.5 inches thick and therefore complied with the contract is also supported by Chammas testimony. Moreover, the fact that appellant testified at trial that he is using the parking lot for its intended purpose supports the trial court's conclusion that appellee substantially complied with the contract. Because the trial court's judgment that appellee substantially complied with the contract is supported by competent and credible evidence, the judgment is not an abuse of discretion.

**{¶40}** Accordingly, appellant's sole assignment of error lacks merit and is overruled.

**{¶41}** For the reasons stated above, the trial court's judgment is hereby affirmed.


Waite, P. J., concurs.

Robb, J., concurs.


Case No. 18 MA 0107

_____

For the reasons stated in the Opinion rendered herein, the sole assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**